**Maya Robert JAMES, Petitioner,**

v.

**John D. ASHCROFT, Respondent.**\*

No. 02–2910.

United States Court of Appeals, Seventh Circuit.

---

\* The petition for review correctly identified the Immigration and Naturalization Service ("INS") as the respondent in this case. *See* 8 U.S.C. § 1105a(a)(3) (1994). On March 1, 2003, the INS ceased to exist as an independent agency within the United States Department of Justice, and its functions were transferred to the newly formed Department of Homeland Security. See Homeland Security Act of 2002, Pub.L. No. 107–296, 110 Stat.

Submitted Oct. 20, 2003.**

Decided Oct. 22, 2003.

Before BAUER, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

2135 (Nov. 25, 2002). This petition for review challenges a final order of the Board of Immigration Appeals, which, at present, is still a component of the Department of Justice. Attorney General John D. Ashcroft is therefore substituted for the INS as respondent.

** After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

ORDER

Indian citizen Maya Robert James entered the United States in 1995 as a nonimmigrant visitor for pleasure, but overstayed her visa. In June 1997 the former Immigration and Naturalization Service (INS) began removal proceedings, which prompted James to renew a previously filed application for asylum, withholding of removal, protection under the Convention Against Torture, or voluntary departure. In March 1999 an immigration judge (IJ) allowed for voluntary departure but otherwise denied James's application, a decision affirmed summarily by the Board of Immigration Appeals (BIA) in June 2002. James petitions here for further review, which we deny.

At the start of the hearing on her application in March 1999, James was represented by Sakina Carbide. Carbide, though, promptly informed the IJ that James had just retained a new California attorney who wanted the proceeding transferred from the Chicago area to California. Carbide informed the IJ that James wished to continue her case, and then moved to withdraw. The IJ replied that he would not force Carbide to stay in the case, but neither would he continue the matter further. James and Carbide then briefly conferred, after which Carbide renewed both the motion for a continuance and her own motion to withdraw. The IJ allowed the latter but told James that her hearing would proceed because the case was "as ready as it will be." The IJ noted that he had not received anything from James's new attorney, that James had not provided proper notice of her request for continuance, and that James's case already had been continued six times.

During the hearing that followed, the IJ questioned James through an interpreter. James first clarified that she is Christian rather than Sikh, as was erroneously stated on her asylum application. Regarding past persecution, James testified that in August 1993 she was kidnapped on her walk home from school by four or five unknown men wearing khaki police uniforms and driven to a local police station where they beat and raped her. James may also have been raped in the van before arriving at the police station, but her testimony is inconsistent. The men did not explain why they were attacking her, but warned James not to report the incident. James told the IJ that she ultimately lost consciousness and woke up in the hospital where her husband works as an administrator. James added that afterward she followed the advice of a police officer she knew, who recommended during a private conversation that she not report the incident.

James was not assaulted again, but afterwards she began receiving threatening phone calls at home, which her three daughters occasionally answered. James conceded, however, that her husband and daughters remain in India and–aside from unrelated verbal harassment of her daughters–have not been harassed or attacked.

When the IJ pressed James about a motive for the attack, she speculated that it was related to her husband's work at the hospital. James explained that some time before she was assaulted, persons she believed to be either police officers, imposters, or possibly even terrorists had brought an unconscious man to the hospital. Her husband, she said, had admitted the man as a patient and arranged for him to be seen by a physician. Later, though, a group of men–possibly the same men–had come to the hospital and demanded that her husband remove the patient's oxygen. James cited her husband's refusal as a possible reason for the attack. She offered no other reasons.

In denying James's application, the IJ explained that he had tried several times without success to elicit from her a motive for the assault that might allow the attack to be seen as persecution based on one of the listed motivations. The IJ added that James's documentary evidence pointed only to general violence in India and not to police violence targeted at women. Finally, the IJ noted that James's husband and daughters had remained in India unharmed. The IJ, though openly skeptical about portions of James's testimony, accepted it as true for purposes of his decision.

In petitioning for review James first argues that the IJ abused his discretion in denying a continuance, and thus effectively deprived her of counsel's assistance and prevented her from fully and fairly presenting her case. An IJ has discretion to grant or deny a continuance, *Hassan v. INS*, 110 F.3d 490, 492 (7th Cir.1997), and we will uphold the ruling unless it lacks rational explanation, departs inexplicably from established policies, or rests on an impermissible basis. *Cordoba–Chaves v. INS*, 946 F.2d 1244, 1246 (7th Cir.1991).

 James has demonstrated no abuse of discretion. She had already been granted multiple continuances and did not alert the IJ that she wanted another continuance until after the hearing had started, so the IJ rationally declined to further delay the matter. Nor has James shown that the IJ's ruling left her unrepresented and unable to present her case. Asylum applicants have no Sixth Amendment right to counsel, *see Mojsilovic v. INS*, 156 F.3d 743, 748 (7th Cir.1998), but are entitled to a fundamentally fair hearing under the Due Process Clause of the Fifth Amendment, *Castaneda–Suarez v. INS*, 993 F.2d 142, 144 (7th Cir.1993). The petitioner must be afforded an opportunity to hire counsel of her own choice, 8 U.S.C. § 1362,

but James, who came to the hearing with retained counsel and fired her after the hearing started, had more than sufficient opportunity to secure counsel for her hearing. Regardless, a petitioner claiming a due process violation must produce concrete evidence that being denied a continuance might have affected the outcome of the hearing. *Ambati v. Reno*, 233 F.3d 1054, 1061 (7th Cir.2000). In this instance James points to no supporting evidence that she wished to present but could not without a continuance, nor does she identify any reason to conclude that the outcome of the hearing would have been different had she been allowed more time to replace Carbide after discharging her.

 James also argues that the IJ erred in finding that she was ineligible for asylum. The Attorney General has discretion to grant asylum to a refugee, defined as an alien who is unable or unwilling to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); 8 U.S.C. § 1158(b)(1). Persecution can include sexual assault if committed for one of the statutorily protected reasons. *See Angoucheva v. INS*, 106 F.3d 781, 789 (7th Cir.1997). Where the BIA summarily adopts the IJ's decision or uses its new summary affirmance procedures, we evaluate the IJ's findings and reasoning as if it were the BIA's. *Mousa v. INS*, 223 F.3d 425, 428 (7th Cir.2000). We will affirm the decision so long as it was "supported by reasonable, substantial, and probative" evidence. *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). We will reverse only if the evidence is "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Id.* at 483–84,

112 S.Ct. 812; *see* 8 U.S.C. § 1252(b)(4)(D). Our review is limited to the administrative record on which the order of removal is based. 8 U.S.C. § 1252(b)(4)(A).

To establish past persecution James was not required to show the exact motivation of her attackers, but she did bear "the burden of establishing facts on which a reasonable person would fear that the danger arises on account of [her] race, religion, nationality, membership in a particular social group, or political opinion." *In re S–P–,* 21 I. & N. Dec. 486, 490 (BIA 1996) (quoting *Matter of Fuentes,* 19 I. & N. Dec. 658, 662 (BIA 1988)). Here we agree with the IJ that, even accepting as credible James's testimony that she was assaulted by men dressed as police officers, James did not show during her hearing that she was assaulted *on account of* her religion, or membership in a social group, or expression of a political opinion. James merely speculated that the assault was to retaliate for her husband's refusal to remove oxygen from an unconscious patient, but she never explained how her husband's actions related to a protected statutory ground. Nor did she explain how her husband and daughters have avoided persecution if it was his actions that precipitated the attack against her.

In her brief to this court, James now offers that the unconscious patient was a member of the Sikh religion. She explains that her husband's refusal to comply with the policemen's request to remove the oxygen made him appear supportive of the Sikhs and their goal of achieving an independent Sikh state. From this she now views her abduction and rape as the method the police chose to send a message to her husband. Although this explanation perhaps responds to some of the IJ's questions, we are limited to reviewing only the administrative record on which the order

of removal is based. *See* 8 U.S.C. § 1252(b)(4)(A).

■ Although James also argues that she has a well-founded fear of future persecution, the answer is the same: she did not connect her fear of a future assault to a protected ground. Further, the reasonableness of an alien's fear of future persecution is reduced when her family remains in her native country unharmed for a long period of time after her departure. *In re A–E–M,* 21 I. & N. Dec. 1157, 1160 (BIA 1998). Because James's husband and daughters remain unharmed in India since she fled the country in 1995, it is less likely that James would face harm upon her return.

A request for asylum automatically includes a request for withholding of removal. 8 C.F.R. § 208.3(b). Withholding of removal is mandatory if an "alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1231(b)(3)(A), or if she would be tortured if removed, 8 C.F.R. § 208.16(b)(2). A petitioner must establish that it is "more likely than not" that she would be persecuted or tortured. 8 C.F.R. § 208.16(b)(2), (c)(2). Because the burden of proof for withholding of removal is higher than that for asylum, James's ineligibility for asylum necessarily means the IJ's denial of withholding of removal was also not clearly erroneous. *Kharkhan v. Ashcroft,* 336 F.3d 601, 605 (7th Cir.2003); *Dandan v. Ashcroft,* 339 F.3d 567, 575 n.7 (7th Cir. 2003).

For the foregoing reasons, we DENY the petition for review and AFFIRM the decision of the Board of Immigration Appeals.