# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1103

YAROSLAV P. KUSCHCHAK,

*Petitioner*,

v.

JOHN D. ASHCROFT, United States
Attorney General,

*Respondent*.

_____

Petition for Review of an Order
of the Board of Immigration Appeals.
A76 865 624

_____

ARGUED JANUARY 21, 2004—DECIDED MAY 3, 2004

_____

Before FLAUM, *Chief Judge*, and POSNER and RIPPLE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Petitioner Yaroslav Kuschchak seeks review of an adverse decision of the Board of Immigration Appeals (the "BIA" or "Board") that deemed his application for asylum abandoned. For the reasons set forth in the following opinion, we deny the petition and affirm the decision of the BIA.

**I**

**BACKGROUND**

**A. Facts**

Mr. Kuschchak is a native of the former Soviet Union and a citizen of the Ukraine Republic. He arrived in the United States on July 15, 1996, as a visitor for pleasure. On June 11, 1998, Mr. Kuschchak filed an application for asylum.

In his asylum application, Mr. Kuschchak stated that his father had been a Ukrainian police officer involved in an investigation of high-level government officials. He explained that "[m]y father was in . . . possession of exposing materials on the people in Ukrainian government, army and defence [sic]. He was brutally murdered by corrupted structures." A.R. 148. Mr. Kuschchak stated that individuals in the Ukrainian government believed that other family members also possessed incriminating evidence, and he and his family moved from town to town seeking safety. According to Mr. Kuschchak's affidavit, "[a]lmost all the people who were in possession of any kind of information pertaining [to] this case are now dead." *Id.* Furthermore, the officials targeting his family only had become more powerful over time and therefore he and his family, at least at the time of the affidavit, were still at risk. *See id.*

When the asylum office did not approve Mr. Kuschchak's application, Mr. Kuschchak was placed in removal proceedings.

**B. Administrative Proceedings**

**1. Preliminary Hearing**

On March 23, 1999, Mr. Kuschchak and his attorney attended a master calendar hearing before an Immigration

Judge ("IJ"). At that hearing, Mr. Kuschchak's counsel indicated that Mr. Kuschchak would like to apply for adjustment of status based on his selection for the diversity lottery. The IJ believed that it was unlikely, based on Mr. Kuschchak's lottery number, that a visa would become available. Consequently, the IJ determined that it would not be "an appropriate use of the respondent's money and my time to consider an adjustment application for which he's not currently eligible." A.R. 87. However, the IJ stated that, if it appeared that a visa would become available, he would entertain Mr. Kuschchak's motion for an expedited hearing and his application for adjustment of status.

At the same hearing, Mr. Kuschchak's attorney indicated that Mr. Kuschchak wished to proceed on his asylum application. After a cursory review of the papers, the IJ noted that Mr. Kuschchak had not filed an asylum application within one year of his arrival in the United States and further noted that there was no such requirement for withholding of removal. Mr. Kuschchak's attorney responded that he "would like to make the application a request for withholding of removal, but if, in fact, I discuss with Mr. Kuschchak and discover that there was, you know, exceptional circumstances which resulted in the late filing I would like an opportunity to file a brief in support of that." *Id.* at 89. The IJ agreed to "set the case up for a merits hearing on the application for withholding of removal." *Id.* at 90.

Finally, the IJ tended to some scheduling matters. The IJ inquired: "[I]f you think that you're going to be calling more than the respondent to testify, I'll set it for an afternoon. If you think he's going to be the only witness, I'll schedule it for a morning." *Id.* at 91. Mr. Kuschchak's attorney responded that he believed Mr. Kuschchak was "going to be the only witness." *Id.* The IJ then set the hearing for November 5, 1999.

## 2. Emergency Motion

On August 13, 1999, Mr. Kuschchak's attorney filed an "Emergency Motion to Advance Hearing." *Id.* at 130. In that motion, Mr. Kuschchak "respectfully request[ed] that this Court advance his hearing." *Id.* The motion first acknowledged that the IJ had "scheduled the next hearing for the Respondent on November 5, 1999." *Id.* However, the motion continued, "all applications for adjustment of status based on the DV-99 diversity immigrant program [must] be completed and adjudicated prior to September 30, 1999." *Id.* In short, if Mr. Kuschchak did not have his adjustment of status adjudicated prior to September 30, 1999, his opportunity for the diversity lottery would be lost.

The IJ granted the motion the same day it was filed. The order provided that "the above captioned case is scheduled for a[n] Individual hearing before the Immigration Court on Aug. 27, 1999 at 4:00 p.m." *Id.* at 246. The order also required "[a]ny additional documents by Aug. 20, 1999." *Id.*

## 3. Merits Hearing

Mr. Kuschchak and his attorney appeared for the hearing on August 27, 1999. After presenting the arguments with respect to the adjustment of status application, the IJ denied the application for lack of eligibility. The IJ then asked Mr. Kuschchak's attorney to proceed with the presentation of evidence on any other relief that Mr. Kuschchak was seeking. The following colloquy between Mr. Kuschchak's attorney and the IJ ensued:

A. Well, we're not prepared to go ahead with any other relief today.

Q. Well, this is the time for it.

A. We're not prepared to go ahead with anything else.

> The only reason we did the motion was to obtain this one. Originally (indiscernible) that November date. It was advanced in order to allow or proceed with the adjustment based on that. And I'd like to take an appeal from the decision denying this.

*Id.* at 109. Mr. Kuschchak's attorney also referenced the March hearing and stated that

> there was a note in there [his file] that if his number becomes available we should at that time file for that [adjustment of status]. Being that the number is available in September we filed based upon the available number. But I am not prepared to proceed any further at this time. I was here for the sole purpose that it was an emergency hearing due to the availability of numbers, due to the fact that he did qualify for that. That was the sole purpose of our motion.

*Id.* at 109-10. The IJ then warned counsel that "either you go ahead with the asylum application and withholding now or I'll consider it abandoned if you don't." *Id.* at 110. Counsel simply responded that he would "take an appeal from that, too." *Id.*

The IJ then tried a different approach and asked Mr. Kuschchak's counsel if he could "make a suggestion." *Id.* The IJ stated:

> I would be willing to recess the matter, let you talk to your client, explain to him what's happened, and, you know, within a reasonable period of time come back, elicit information from him on his asylum application so you could make a record and you can go forward on this . . . .

*Id.* Mr. Kuschchak's counsel, however, flatly refused; he stated: "No, I'm not going to talk to him. I will not proceed

on it because I'm not ready to proceed." *Id.* at 111.

Finally, the IJ addressed Mr. Kuschchak directly:

Mr. Kuschak,[1] this, you have a complicated situation. Your attorney has sought adjustment of status based on the diversity visa program. I have told him I don't believe that you are eligible. He disagrees with me. He's already told me [he] is going to ask another court to review my decision that you're not eligible.

Now, at the earlier hearing Miss Cho, your then attorney, stated that you wanted to obtain political asylum and withholding. In other words, be allowed to remain in the United States because of a claim of persecution. I have told [your attorney] that since I am denying the request for permanent residence on the diversity visa program that he should now go ahead by presenting your case on political asylum so all matters can be completed today. He said that he is not prepared to proceed with that now. Now, Mr. Kuschak, I've told him that I am going to go give you my decision on all matters today, and if he doesn't proceed on the asylum I'll consider it, and withholding I'll consider it abandoned. I've also told him that I'm willing to delay proceeding on that for a time this afternoon to give you time to discuss this before you are called to testify. He is insistent that he is not willing to do that.

I am telling you this so that you know the conversations that I've just had with him. I also want you to know that since you are the one directly affected that you may lose the opportunity to present information on your asylum claim if you refuse to testify and your

---

[1] **Mr. Kuschchak's name was incorrectly spelled "Kuschak" throughout the immigration proceedings.**

attorney refused to call you today.

*Id.* at 111-12. The IJ then allowed Mr. Kuschchak to discuss the matter with his attorney in private.

After the recess, and after counsel again refused to elicit testimony from Mr. Kuschchak on his asylum application, the IJ explained to Mr. Kuschchak that the consequences of his attorney's decision were that the applications for asylum and withholding of removal would be deemed abandoned. The IJ then asked Mr. Kuschchak: "Do you abide by your attorney's decision?" Mr. Kuschchak responded: "Honorable Judge, you yourself said that it was a complicated case. I can't make it, I can't make a decision to continue to go ahead with this matter, I trust my attorney." *Id.* at 115-16. The IJ therefore "accept[ed] [counsel's] decision as that, as your decision as well." *Id.* at 116.[2] The IJ therefore deemed abandoned Mr. Kuschchak's applications for asylum and withholding of removal, but granted Mr. Kuschchak voluntary departure.

## C. BIA Decision

Mr. Kuschchak appealed the IJ's decision to deem Mr. Kuschchak's application abandoned. The BIA held:

> The respondent's request to advance the continued hearing to enable him to apply for adjustment of status did not relieve him of his obligation to appear at the hearing prepared to go forward with his application for asylum and withholding of removal. Although the Immigration Judge might not have specifically indicated that the hearing would also cover the application for the

---

**[2] Although Mr. Kuschchak's counsel refused to elicit testimony regarding the asylum claim, he did ask Mr. Kuschchak to take the stand in support of the application for voluntary departure.**

asylum and withholding of removal, the Immigration Judge informed the respondent on March 23, 1999, that the proceedings were continued to enable him to prepare for a merits hearing on his application for asylum and withholding of removal. Under these circumstances, we find that the Immigration Judge properly concluded that the respondent abandoned his requests for asylum and withholding of removal. It was the respondent who incorrectly assumed that the Immigration Judge would only consider the application for adjustment of status at the rescheduled hearing. Inasmuch as we find no error in the Immigration Judge's decision, we reject the assertion that the Immigration Judge's conduct compromised the fairness of the proceedings.

*Id.* at 3 (citations omitted). Mr. Kuschchak timely appealed.

## II
## ANALYSIS

### A.  Standard of Review

Before this court, Mr. Kuschchak maintains that the IJ deprived him of his right to due process when the IJ deemed his applications for asylum and withholding of removal abandoned. Whether an immigration hearing violates an alien's right to due process is a legal question which this court reviews de novo. *See Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir. 1999).

### B.  Due Process

"It is well-settled that foreign persons in the United States are entitled to due process," *Kerciku v. INS*, 314 F.3d 913, 917 (7th Cir. 2003) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693

(2001)), and aliens subject to removal proceedings are no exception. In that context, "due process requires notice reasonably calculated to provide actual notice of the proceedings and a meaningful opportunity to be heard." *Nazarova*, 171 F.3d at 482. Specifically, we have stated:

> The Fifth Amendment's due process clause mandates that the deportation hearing be fundamentally fair. Specifically, the alien should be afforded the following opportunities: to exercise his right to counsel of his choice at his own expense, to reasonably present his evidence, and to testify.

*Ambati v. Reno*, 233 F.3d 1054, 1062 (7th Cir. 2000) (citations omitted). A petitioner, however, must do more than show that one of these tenets had been violated; in order to prevail on a due process claim, "a petitioner must produce 'concrete evidence' indicating that the due process violation 'had the potential for affecting' the outcome of the hearing." *Id.* (quoting *Kuciemba v. INS*, 92 F.3d 496, 501 (7th Cir. 1996)).

It is undisputed that, during the August hearing, Mr. Kuschchak was represented by the counsel of his choice and was given an opportunity to present his evidence and to testify. However, Mr. Kuschchak argues that the IJ's insistence that he proceed on his applications for relief—in the face of the legitimate confusion regarding the nature of the August hearing—deprived him of a meaningful opportunity to present his case. Indeed, Mr. Kuschchak contends that this court has recognized a lack of fundamental fairness in two cases that bear a factual resemblance to his own. We consider these cases below.

First, Mr. Kuschchak points to *Podio v. Immigration and Naturalization Service*, 153 F.3d 506 (7th Cir. 1998). In *Podio*, the asylum applicant based his claim in part on the fact that

he was imprisoned and tortured as a result of his Baptist faith; however, "[w]hen Podio's attorney attempted to question Podio about the treatment he allegedly received in prison, the immigration judge intervened and admonished that he did not 'want to hear anything about what happened in prison.'" *Id.* at 508. Later in the hearing, Podio proposed to call his sister and brother to corroborate his story and to testify to events subsequent to Podio's departure from the Ukraine. Again, however, "the immigration judge refused to allow them to testify, stating: 'I don't care about them. They've got nothing to do with this case.'" *Id.* After the conclusion of the evidence, the IJ denied Podio's asylum application on the ground that "Podio's testimony was 'generalized, selfserving and uncorroborated by any credible evidence.'" *Id.* On appeal, we held that the IJ's actions violated Podio's right to due process. Our decision was based both on the fact that the IJ "curtailed Podio's testimony regarding the treatment allotted to him in Siberia" and that he "refus[ed] to allow Podio's brother and sister to testify at all." *Id.* at 510.

Mr. Kuschchak argues that his situation is akin to that of the applicant in *Podio* because the IJ's decision to deem Mr. Kuschchak's application for asylum abandoned

> was unwarranted in view of the reasonableness of the misunderstanding and the failure of the I.J. to clarify that any request for an earlier hearing date would include all applications for relief. This decision deprived Mr. Kuschchak of any hearing to present testimony, evidence, and witnesses in support of his claim of persecution.

Petitioner's Br. at 19.

We fail to see the similarities between Mr. Kuschchak's hearing and that of the applicant in *Podio*. In the present case, the IJ requested several times that Mr. Kuschchak

proceed with the presentation of evidence. Mr. Kuschchak's attorney and Mr. Kuschchak himself refused to go forward without additional time to prepare. The IJ did not stymie Mr. Kuschchak's ability to go forward; indeed, he offered Mr. Kuschchak and his counsel a recess during which time counsel could prepare Mr. Kuschchak for his testimony. Finally, the present case does not involve a situation in which the IJ barred key corroboration witnesses from testifying; to the contrary, although Mr. Kuschchak suggests that he would have presented the testimony of other fact witnesses and an expert if the asylum hearing were held at a later time,[3] he has not identified those witnesses or the nature of their testimony. Consequently, on the record before us, we cannot conclude that when the IJ required Mr. Kuschchak to proceed in August, as opposed to November, Mr. Kuschchak was deprived of the opportunity to present corroborating testimony or other crucial evidence.

Mr. Kuschchak also suggests that this court's decision in *Nazarova*, 171 F.3d 478, requires us to reverse the BIA's decision in his case. In *Nazarova*, the asylum applicant received a notice to appear for a removal hearing. Because she spoke only Russian, Nazarova requested that her English-speaking employer call the Immigration and Naturalization Service ("INS") to determine whether an interpreter would be available at the hearing. The INS represented that an interpreter would be available; however, when Nazarova appeared at the hearing, there was no interpreter present. Nazarova therefore hired her own interpreter for the merits hearing. Nazarova went to meet her interpreter on the date of her merits hearing, but he was

---

[3] **At the master calendar hearing in March, Mr. Kuschchak's attorney had indicated that Mr. Kuschchak likely would be the only witness to testify at the merits hearing.**

not in his office; Nazarova waited for him for two hours. When he finally arrived, they proceeded immediately to the hearing; however, the IJ already had adjudicated Nazarova's case in her absence. The BIA affirmed the IJ's in absentia order, and Nazarova appealed to this court. In reversing the BIA, the majority of the panel stated:

> On the unusual facts of this case, Nazarova received adequate notice, but she did not receive a meaningful opportunity to be heard. A non-English-speaking alien has a due process right to an interpreter at her deportation hearing because, absent an interpreter, a non-English speaker's ability to participate in the hearing and her due process right to a meaningful opportunity to be heard are essentially meaningless. . . .
>
> . . . The entire unfortunate chain of events leading to Nazarova's tardiness at her second hearing began with the INS's confusing and contradictory actions with respect to the interpreter question. When it failed to produce one at Nazarova's first hearing, she reasonably believed that the advice her employer had received over the telephone was in error and that she needed to find her own interpreter. Whether or not the INS gave consistent or accurate advice on this crucial aspect of the hearing was certainly a matter beyond Nazarova's control, and it made all the difference to the quality of process she received.

*Id.* at 484.

Despite Mr. Kuschchak's arguments to the contrary, the facts presented in this case are not equivalent to the "unusual facts" presented in *Nazarova*. The crux of our decision in *Nazarova* was the "confusing and contradictory" action on the part of the INS that led to the "entire unfortunate chain of events." Such an action is wholly absent from the present

record. The only actions by the IJ prior to the August hearing were: 1) to advise Mr. Kuschchak's prior counsel that, if it appeared likely that a visa would become available for Mr. Kuschchak, she could move for an earlier hearing, and 2) to grant Mr. Kuschchak's "Emergency Motion to Advance Hearing." Any confusion was caused by the phrasing of Mr. Kuschchak's motion for the August hearing, not by any action of the Government or the IJ. Mr. Kuschchak's counsel styled his motion as a motion to advance hearing, as opposed to simply a motion for an adjustment hearing. In response to Mr. Kuschchak's motion, the IJ advanced the previously scheduled merits hearing, the parameters for which were set in the March hearing and which included the presentation of evidence for asylum and/or withholding of deportation. Although the IJ did not *affirmatively* state that the advanced hearing would address every form of relief that Mr. Kuschchak was seeking, the IJ's actions were consistent with the understanding that the merits hearing in November was being advanced: The notice of the new hearing provided Mr. Kuschchak with a new deadline to file additional supporting documentation, such as a brief in support of Mr. Kuschchak's right to apply for asylum outside the statutory time limits, and also provided that "[f]ailure to appear for this hearing other than because of exceptional circumstances beyond your control will result in your being found ineligible for certain forms of relief under the Immigration and Nationality Act." A.R. 246 (footnote omitted). Consequently, neither the IJ nor the Government took any action or made any statement to mislead or to confuse Mr. Kuschchak; any confusion was the result of Mr. Kuschchak's motion and the assumptions under which Mr. Kuschchak's attorney was proceeding.

Finally, Mr. Kuschchak argues that, even if the IJ was not in error in deeming his applications for relief abandoned, he should not have to suffer the consequences of his attorney's

actions. Mr. Kuschchak cites this court's decision in *Guentchev v. Immigration and Naturalization Service*, 77 F.3d 1036 (7th Cir. 1996), in support of his position. In *Guentchev*, the petitioner's counsel failed to include the IJ's opinion in the appendix to his brief. We noted:

> In ordinary civil litigation, failure to supply the court with the decision under review leads to summary affirmance. In criminal cases, by contrast, courts regularly protect suspects and prisoners from the errors of their lawyers. We have deemed time in prison an excessive sanction for a non-jurisdictional procedural default, and have concluded that counsel should bear the consequences of noncompliance. Deportation, often grouped with criminal litigation because of the severe consequences, deserves similar treatment. We have tracked down the immigration judge's opinion and considered all of Guentchev's arguments on the merits, in order to protect him from the procedural gaffes of his lawyer.

*Id.* at 1039 (citations omitted).

Again, we find little in *Guentchev* that assists Mr. Kuschchak. First, Mr. Kuschchak does not argue that his attorney failed in his representation; indeed, he states that "[t]he belief held by . . . [his counsel] that the August 27, 1999 hearing would only be on the adjustment application was reasonable under the circumstances of this case." Petitioner's Br. at 20. Second, although initially counsel's decision not to go forward was his alone, later in the hearing Mr. Kuschchak made an informed, independent decision not to present his evidence before the IJ. The IJ twice addressed Mr. Kuschchak directly and warned him of the possible consequences of failing to go forward, after which Mr. Kuschchak told the IJ that he would abide by the decision of his counsel. Thus, although we have held that, in some circumstances, an alien should not be prejudiced by

his counsel's actions, here Mr. Kuschchak was given the opportunity to proceed and was warned of the consequences of the failure to do so. The decision not to proceed was his own, and he must bear the consequences of his decision.

As a final matter, we note that, even if we had found that the IJ's actions deprived Mr. Kuschchak of his right to due process, Mr. Kuschchak still was required to come forward with evidence to show that the deprivation "had the potential for affecting the outcome of the hearing." *Ambati v. Reno*, 233 F.3d 1054, 1062 (7th Cir. 2000) (citations omitted). Mr. Kuschchak maintains that he met this burden because, if the IJ had not considered the application for relief abandoned, Mr. Kuschchak "would have presented testimony and evidence in support of these applications and to establish his statutory eligibility to apply for asylum under one of the exceptions in the INA section 208(a)(2)(D) more than one year after his arrival in the United States in July 1996." Reply Br. at 17. Although this statement suggests that the hearing would have proceeded differently had it been held in November, it does nothing to show that the *outcome* of the proceeding would have been different. Indeed, Mr. Kuschchak's argument is similar to that of the petitioner in *Ambati*. In *Ambati*, an initial continuance had been granted to allow the petitioner to secure counsel. The petitioner did so, but on such short notice that new counsel did not believe that she was prepared to go forward. Nonetheless, because the IJ refused to grant another continuance, the attorney presented the testimony of Ambati. Before this court, Ambati argued that the IJ's failure to grant another continuance violated his rights to due process. This court disagreed and noted:

> Mr. Ambati offers no evidence that the outcome of the hearing would have been different had he obtained

a continuance. He has not set forth any evidence that would have been presented or arguments that would have been made had his counsel been given additional time to prepare his case. Consequently, assuming a due process violation occurred, Mr. Ambati has not come forward with evidence that the violation affected the outcome of the hearing.

*Id.* at 1062. Mr. Kuschchak, like Ambati, failed to come forward with any evidence or legal argument showing that he would have been granted asylum or withholding of deportation if allowed to go forward. Consequently, Mr. Kuschchak has not made the necessary showing of prejudice in order to make out a due process violation under this court's case law.[4]

## Conclusion

For the foregoing reasons, the petition for review is denied, and the judgment of the BIA is affirmed.

PETITION FOR REVIEW DENIED; AFFIRMED

A true Copy:

Teste:

---

[4] In addition to claiming that the actions of the IJ violated his due process rights, Mr. Kuschchak also maintains that the IJ's actions violated the BIA's own precedent, specifically *Matter of Fefe*, 20 I. & N. Dec. 116 (BIA 1989), and *Matter of Balibundi*, 19 I. & N. Dec. 606 (BIA 1988). Both of these cases emphasize the necessity of an applicant's oral testimony in support of an asylum application. The IJ's decision to deem Mr. Kuschchak's application abandoned in the absence of supporting testimony is completely consistent with these decisions.

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—5-3-04