# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 03-2254 & 03-3180

ARBEN KUQO, MAHIRE KUQO, ERA KUQO,
EMEA KUQO and KEJT KUQO,

*Petitioners,*

*v.*

JOHN ASHCROFT,

*Respondent.*

———————

On Petitions for Review of an Order of
the Board of Immigration Appeals.
Nos. A75 320 496, A79 562 042-44, A72 413 389

———————

ARGUED OCTOBER 26, 2004—DECIDED DECEMBER 7, 2004

———————

Before EASTERBROOK, ROVNER and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Arben Kuqo, a 41-year-old Albanian citizen, entered the United States in 1997 and, at a removal hearing in 1998, applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture. The applications were denied by an immigration judge in 1999, and the Board of Immigration Appeals (BIA)

affirmed in 2003. In these consolidated petitions for review, Kuqo and his family seek review of the final orders issued by the BIA.[1] We affirm.

In his application for asylum, Kuqo alleged that he had been persecuted by leaders of a nongovernmental political organization called the Association of the Formerly Politically Persecuted (AFPP), a group in which he was a member. The persecution resulted, he claimed, from his complaints about corruption and cigarette smuggling involving members of the group's leadership. At his hearing before the immigration judge, he testified that he was threatened with death and beaten up, requiring hospitalization, after he spoke out about corruption at a group meeting. He also testified that he was shot at while driving in a car and claimed that he was the subject of libel charges resulting from his efforts to expose corruption at the AFPP. The immigration judge was not convinced, however, finding that Kuqo's fear of persecution was really only a fear that members of a private organization were trying to keep him from blowing the whistle on their extracurricular activities. The judge also discounted Kuqo's stated fears of persecution in light of the fact that Kuqo had voluntarily returned to Albania in 1997. In light of these and other reasons, Kuqo's application for asylum and other relief was denied.

The review before us, however, pertains not to the merits of Kuqo's application but rather to a matter of procedural concern, namely, the dialect spoken by his interpreter during the first day of his two-day hearing before the immigration judge. Immediately prior to Kuqo's February 17, 1999 asylum hearing, his counsel informed the judge that the

---

[1] Arben Kuqo is the lead petitioner for his family members Mahire, Era, Emea, and Kejt Kuqo, who base their claims for relief on his application.

court-appointed interpreter spoke the Gheg dialect of the Albanian language rather than the Tosk dialect spoken by Kuqo. Kuqo and the interpreter had conducted a sort of dry run in advance of the hearing, however, which satisfied Kuqo that, despite the difference in dialect, he was able to communicate effectively with the interpreter. Kuqo's attorney told the judge that Kuqo "has advised me that he believes that he understands this gentleman perfectly, and thus wishes to continue." Kuqo confirmed this on the record in a colloquy with the judge.

The hearing proceeded smoothly until Kuqo's counsel noticed an unidentified man in the rear of the room gesticulating with his hands, which counsel took to mean that the interpreter was not translating accurately. Counsel asked the judge whether the individual might be able to assist in determining where the translation went awry. The judge denied the request, stating that "I can't have somebody in the back of the room—I don't even know if he's second-guessing because you're just talking about some hand gestures now." The judge further stated: "I don't see any sign that [Kuqo] doesn't understand my questions, and so until I do, until I'm presented with more concrete indication . . . that there's . . . miscommunication happening I'm just going to observe, carefully observe what happens and see if there is a problem." The hearing proceeded and counsel made only one other minor objection to the translation. A second day of testimony occurred on September 10, 1999, this time with an interpreter who spoke Kuqo's dialect of Albanian.

Kuqo now contends that he was denied due process because his interpreter's inability to speak his dialect prevented Kuqo from meaningfully participating in his asylum hearing. We have no doubt that due process requires a competent interpreter to assist an alien who does not speak English in presenting evidence on his own behalf. *Nazarovna v. INS*, 171 F.3d 478, 484 (7th Cir. 1999). But

Kuqo's claim founders on his inability to demonstrate either that the translation was actually flawed or that he was prejudiced by the allegedly ineffective translation.[2]

At the hearing Kuqo testified about his allegations of persecution in some detail and appeared fully capable of making his case for relief. Nowhere does he show that the interpreter caused any kind of material misunderstanding, either on the judge's part or Kuqo's. At oral argument Kuqo's counsel admitted that a recording of the hearing was available and that another translator could have listened to the tape and documented any instances of faulty translation. That was not done. Nor are there any affidavits in the record explaining where the interpreter deviated from what was actually said. Given the absence in the record of any evidence of an erroneous translation, there is no basis to evaluate Kuqo's claim that he was denied due process because of inadequate interpretation at the hearing.

For these same reasons, Kuqo is unable to demonstrate prejudice. Immigration hearings, like trials, are not reviewed for perfection; a reviewing court will not order a new hearing without a showing that a party's rights were actually

---

[2] The difference between the two dialects is a matter about which we are neither prepared nor qualified to opine. According to some sources, the two dialects are of "limited mutual intelligibility." *See* http://www.geocities.com/language_directory/languages/albanian.htm. Others suggest that the dialects "have been diverging for at least a millennium, and their less extreme forms are mutually intelligible." *See* http://www.britannica.com/eb/article?tocId=74918. Here, Kuqo confirmed on the record that he could communicate adequately with the translator; the objection came later, based on the intervention of an unidentified onlooker in the hearing room. This suggests that in this instance at least the dialect variances were more subtle than petitioner now alleges.

affected by the error alleged. *Capric v. Ashcroft*, 355 F.3d 1075, 1087 (7th Cir. 2004). In *Ambati v. Reno*, 233 F.3d 1054, 1061-62 (7th Cir. 2000), for example, the petitioner claimed that he was denied a full and fair opportunity to present his case because the immigration judge denied his request for a continuance to allow new counsel more time to prepare. We rejected the claim, because even assuming a due process violation had occurred, the petitioner had not "come forward with evidence that the violation affected the outcome of the hearing." *Id.* at 1062.

The same is true here. A generalized claim of inaccurate translation, without a particularized showing of prejudice based on the record, is insufficient to sustain a due process claim. The decision of the BIA is AFFIRMED. The consolidated petitions for review are DENIED.

A true Copy:

      Teste:

                  _____

                  *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*