# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-4050

MIGUEL ANGEL RAMOS,

*Petitioner*,

v.

ALBERTO R. GONZALES, Attorney General
of the United States[*]

*Respondent.*

_____

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A77 862 762

_____

ARGUED SEPTEMBER 30, 2004—DECIDED JULY 12, 2005

_____

Before ROVNER, WOOD, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* Until the recent enactment of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (2005), which among other things amended the judicial review provisions governing orders of removal in immigration cases, this case would have required a straightforward

_____

[*] Pursuant to FED. R. APP. P. 43(c), we have substituted Alberto R. Gonzales, the present Attorney General of the United States, for his predecessor in office.

inquiry. If, as the government argued, Miguel Angel Ramos was being removed because he had been convicted of a controlled substance offense, we would have had jurisdiction only to ensure that he was indeed the correct person, that the offense qualified as one covered by § 242(a)(2)(C) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1252(a)(2)(C), and that Ramos raised no "substantial" constitutional claims. See *Yang v. INS*, 109 F.3d 1185, 1192 (7th Cir. 1997); *Lara-Ruiz v. INS*, 241 F.3d 934, 939 (7th Cir. 2001). If those preliminary inquiries demonstrated no flaws in the removal order, we would have lacked jurisdiction to proceed any further with the case. *Flores v. Ashcroft*, 350 F.3d 666, 668 (7th Cir. 2003).

The REAL ID Act has changed all of that. It amended INA § 242(a) to permit the courts of appeals on a proper petition for review to consider constitutional claims and questions of law. See REAL ID Act § 106(a)(1)(A)(iii), amending 8 U.S.C. § 1252(a)(2) by adding a new subpart (D). This amendment was effective on the date of the enactment of the statute, May 11, 2005, and applies to all appeals from removal orders "issued before, on, or after the date of enactment." REAL ID Act § 106(b). We must therefore consider Ramos's arguments that the government violated his constitutional rights in the proceedings that led to his order of removal. We conclude that his rights were not infringed, and we therefore deny Ramos's petition for review.

# I

In August 2000, Nebraska officials arrested Ramos for attempted possession of cocaine, charging him with violating Neb. Rev. Stat. §§ 28-201 and 28-416 (2003). Aside from the fact that he was doing the wrong thing, he was also in the wrong place at the wrong time. Ramos is a native and citizen of Mexico, who had entered the United States at some earlier point "without inspection," as the euphemism

goes. This arrest led to a *nolo contendere* plea in state court, triggering a series of unfortunate events. Nebraska sentenced Ramos to a fine of $500 and court costs. As with many in his position, however, that formal punishment was slight compared to the real-world consequences of his mistake; his plea spelled the end to his effort to have his status adjusted based on his marriage to a U.S. citizen. Although the record on this part of the case is incomplete, Ramos asserts in his reply brief that he had an I-130 family petition approved for his benefit on August 17, 1992, and he had remained in this country ever since, complete with social security number and employment verification documents. The immigration authorities ultimately denied his application for adjustment on January 24, 2003, however, apparently because of the Nebraska conviction. Finally, the conviction prompted the then-INS to initiate removal proceedings against him (also on January 24, 2003), claiming that he was removable on two grounds: first, as an alien who was present in the United States without being admitted or paroled, INA § 237(a)(6)(A)(i), as amended, 8 U.S.C. § 1182(a)(6)(A)(i); and second, as a person who was automatically removable for committing a controlled substance offense, INA § 212(a)(2)(A)(i)(II); 8 U.S.C. § 1182(a)(2)(A)(i)(II).

On February 10, 2003, Attorney Bart A. Chavez entered his appearance before the immigration court on behalf of Ramos. He presented a form (EOIR-28) that Ramos purportedly had signed, which authorized Chavez to represent him. One of the first actions Chavez took on Ramos's behalf was to file a motion before the Nebraska court to set aside Ramos's drug conviction, relying on the authority conferred by Neb. Rev. Stat. § 29-2264. That court granted the motion in an order dated March 10, 2003, stating that "the adjudication previously entered by this Court is hereby set aside and nullified, and the Court further orders that all civil disabilities and disqualifications imposed as a result of said adjudication are hereby removed."

After that date, proceedings continued before Immigration Judge (IJ) James R. Fujimoto, who sits on the Chicago immigration bench. Ramos, his lawyer, the witnesses, and the government's lawyer participated by teleconference from Council Bluffs, Iowa, as we noted in an earlier decision in this matter. See *Ramos v. Ashcroft*, 371 F.3d 948 (7th Cir. 2004) (*Ramos I*). In that opinion, we rejected the government's argument that venue for this appeal properly lies in the Eighth Circuit rather than this court. *Id.* at 949. Although the government has now asked us to reconsider that decision, based on a new order issued by Chief Immigration Judge Michael J. Creppy that states that hearings will be presumed to be where the parties and lawyers are located, not where the IJ is, we decline the invitation. *Ramos I* established the law of the case with respect to venue for this proceeding, and we thus move on to the merits.

We said earlier that Ramos "participated" in the hearings held in Council Bluffs before the Chicago judge, but one of the points Ramos now raises before us is that he never appeared in person during any of the three IJ hearings leading up to his removal. At the preliminary hearing held on March 24, 2003, Chavez appeared on behalf of Ramos and announced that Ramos was waiving his right to appear in person. After a brief discussion, Judge Fujimoto continued the hearing to April 28, 2003. At that time, Chavez again appeared and again said that Ramos was waiving his right to appear. Chavez also made two important concessions at the April 28 hearing: he confirmed the existence of Ramos's substance abuse conviction (which by then the Nebraska court had expunged); and he conceded the facts alleged in the Notice to Appear relating to Ramos's presence in the United States without admission or inspection. The judge then continued the hearing until May 12, 2003. At that last hearing, Chavez again appeared for Ramos and for the third time waived Ramos's right to appear. At the

conclusion of the hearing, the IJ issued an oral decision ordering Ramos removed from the United States.

In his opinion, the IJ found Ramos removable on both grounds that the INS had alleged. Based on Chavez's representation that Ramos admitted the factual allegations in the Notice to Appear, the IJ concluded that Ramos was removable under § 212(a)(6)(A)(i) of the INA for being present without admission or parole. With respect to the Nebraska conviction, the judge first acknowledged the state court's action setting it aside. Nevertheless, the judge noted that the Board of Immigration Appeals (BIA) had held in *Matter of Roldan*, 22 I & N Dec. 512 (BIA 1999), that dismissals under a state rehabilitative statute like Neb. Rev. Stat. § 29-2264 do not erase a conviction for immigration purposes. For that reason, the IJ found that Ramos was also removable because he had a conviction covered by 8 U.S.C. § 1101(a)(48)(A) (his controlled substance offense), for which there had been a formal judgment of guilt and a form of punishment (the $500 fine).

At that point, Ramos (represented by new counsel) returned to the Nebraska court and secured an order *nunc pro tunc*, which reissued the March 18 expungement order and added the following language: "The Court further finds that since the Defendant was sentenced to a fine only, that rehabilitative efforts of the Defendant are not considered or relevant under Nebraska Revised Statutes § 29-2264, and the Defendant is entitled to have said judgment set aside without a showing of rehabilitation." Equipped with this order, Ramos went to the BIA and filed a motion to remand the case to the IJ with instructions that the decision be reconsidered. The BIA refused to do so. Instead, it affirmed the IJ's decision and denied the motion to remand. It found no due process violation based on Ramos's lack of personal attendance at the three hearings. It said nothing about any equal protection claim. It did, however, find that Ramos had not met his burden under *Matter of*

*Lozada*, 19 I & N Dec. 637 (BIA 1988), of showing that his counsel was ineffective; and it concluded that the conviction, even with the extra language about rehabilitation, sufficed for immigration purposes. On the last point, the BIA relied on this court's decision in *Gill v. Ashcroft*, 335 F.3d 574, 577-78 (7th Cir. 2003), which upheld the rule of *Matter of Roldan*. Ramos then petitioned for review in this court.

## II

Before this court, Ramos has presented two constitutional arguments for relief: first, that the manner in which the government conducted the proceedings before the IJ violated his due process rights, and second, that it violates equal protection principles to remove him based on his now-expunged, minor state court conviction, when the government could not remove him on that basis had he been convicted under the analogous Federal First Offender Act (FFOA), 18 U.S.C. § 3607. Our ability to reach these arguments was limited before the passage of the REAL ID Act. At this point, however, as we noted at the outset of this opinion, the INA now says that "[n]othing in subparagraph (B) or (C), or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." REAL ID Act § 106(a)(1)(iii), amending 8 U.S.C. § 1252(a)(2). We therefore proceed directly to Ramos's two constitutional arguments.

*Due Process.* Ramos is correct insofar as he argues that the Fifth Amendment to the Constitution entitles aliens to removal proceedings that comport with due process. See *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Capric v. Ashcroft*, 355 F.3d 1075, 1087 (7th Cir. 2004). It is not

enough, however, to show that the procedures used fell short in some constitutionally significant way. In order to prevail on a due process claim, the petitioner must establish that the violations that occurred were prejudicial to him. *Capric*, 355 F.3d at 1087. The due process violation must have been one likely to have an impact on the result of the proceeding. *Id.* at 1087-88.

Whether or not Ramos is correct that the IJ's procedures fell short of the constitutionally required standard, we conclude that he cannot show prejudice on this record. There is no ironclad rule that aliens subject to removal procedures have a right personally to be present for every stage of the proceeding, unless extraordinary circumstances are present. *Cf.* U.S. CONST. amend. VI; FED. R. CRIM. P. 43(a). To the contrary, the INA allows a removal proceeding to take place in the absence of the alien if that absence is "agreed to by the parties." See 8 U.S.C. § 1229a(b)(2)(A)(ii). Here, Ramos signed an EOIR-28 form recognizing Chavez as his lawyer, and Chavez then expressly waived appearance on Ramos's behalf on three separate occasions.

Ramos argues, however, that this is not good enough, at least where the IJ never asked him in person whether Chavez was really his counsel of choice. He points to 8 C.F.R. § 1240.10(a)(1) as authority for this requirement. Putting to one side the question whether a violation of this regulation would at the same time violate Ramos's due process rights, we think that Ramos is probably reading too much into the rule. That section reads as follows:

> (a) In a removal proceeding, the immigration judge shall:
>
> (1) Advise the respondent of his or her right to representation, at no expense to the government, by counsel of his or her own choice authorized to practice in the proceedings.

Although the regulation uses the word "shall" when referring to the judge's duty, the point of this rule seems to be to assure that the alien knows about the right to counsel regardless of financial circumstances. When he has already gotten a lawyer and the lawyer submits form EOIR-28, it is hard to see how the IJ's failure to issue the prescribed advice would prejudice the alien.

Even if we assume that there is something either in this regulation or in due process standards generally that requires that the alien be present for the critical stages of his hearing, Ramos has not shown how the failure to meet that requirement prejudiced him. See *Kuschchak v. Ashcroft*, 366 F.3d 597, 602 (7th Cir. 2004). He does not, even now, challenge the truth of the five allegations on which the IJ relied. Those allegations were as follows:

> 1. Ramos is not a national of the United States.
>
> 2. Ramos is a native of Mexico and a citizen of Mexico.
>
> 3. Ramos arrived in the United States at or near an unknown place, on or about an unknown time.
>
> 4. He was not then admitted or paroled after inspection by an Immigration Officer (or he arrived at a time or place other than as designated by the Attorney General).
>
> 5. He was, on September 22, 2000, convicted in the County Court of Hall County, Nebraska, for the offense of Attempted Possession of a Controlled Substance, to wit: Cocaine, in violation of sections 28-201 and 28-416, Nebraska Revised Statutes.

Before this court, Ramos has not even tried to contradict those five points as a matter of fact. Allegations 1 through 4 are enough in themselves to support the order of removal, before we even consider the legal issue Ramos has raised about Allegation 5. Under the circumstances, there is no need to discuss Ramos's other due process complaints in

detail. Whatever procedural slips the IJ may have made did not, in the end, result in the kind of prejudice to Ramos that would justify a remand for further proceedings on due process grounds.

We add for the sake of completeness that Ramos has not denied that Nebraska convicted him of a cocaine offense. He argues only that the state court's action expunging his conviction should relieve him of the legal consequences of that conviction for immigration purposes. In *Gill v. Ashcroft, supra*, however, we discussed 8 U.S.C. § 1101(a)(48)(A), which defines the term "conviction" for purposes of 8 U.S.C. § 1227(a)(2)(B)(i). The statute requires only a formal judgment of guilt entered by a court (which includes a plea of *nolo contendere*) and some form of "punishment, penalty, or restraint on the alien's liberty." When those criteria are met, the government may remove the alien. We wrote further that "[e]very court that has considered the subject believes that § 1101(a)(48)(A) governs the handling of repeat offenders and that expungements (or restorations of civil rights) under state law do not negate a 'conviction' for purposes of immigration law." 335 F.3d at 577. Although the question in *Gill* had to do with the treatment of deferred dispositions, the underlying decision to defer to the BIA's characterization of the conviction for immigration purposes applies here as well. Thus, the Nebraska conviction provides an independent basis for rejecting Ramos's challenge to the BIA's decision.

*Equal Protection*. Ramos's equal protection argument relies on the fact that the government is treating his state conviction more harshly than it would an analogous conviction under the FFOA, 18 U.S.C. § 3607. See *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886) (holding that aliens are entitled to equal protection of the law). The first problem with this contention is once again *Gill*. Addressing a similar point, this court held that there is a distinction between prosecution in federal court and prosecution in state court,

and that we are bound to observe that distinction as long as § 1101(a)(48)(A) reads as it does. 335 F.3d at 578. Second, Ramos's premise—that someone with a FFOA conviction would escape immigration consequences—is not necessarily correct. We do not know what the BIA would do if it were confronted with this situation, nor do we know whether its decision would pass legal muster. All we can say is that since the 1996 changes to the INA, the BIA has never used the FFOA to preclude removal. Finally, Ramos's assumption that it is utterly irrational to treat the FFOA and state convictions like his differently goes too far. State laws vary considerably, and the BIA (as well as Congress) reasonably might have thought that the law should entitle only persons who actually have been charged and sentenced under the FFOA to leniency for immigration purposes.

## III

While we realize that Ramos is paying a heavy price for a drug deal that the prosecuting jurisdiction—Nebraska—initially treated as a small-time misstep and later erased, it is the price that Congress has prescribed under the immigration statutes. Even if there were flaws in the procedures that led to his order of removal, we can find no prejudice to him as a matter of due process. Similarly, we reject his equal protection challenge to his order of removal. The petition for review is therefore DENIED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*