In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-3177

HARJIT SINGH,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A78 366 815

ARGUED APRIL 6, 2007—DECIDED MAY 23, 2007

Before POSNER, FLAUM, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Harjit Singh, a native and citizen of India, snuck into the United States from Mexico after traveling from Guatemala, where he had been living for eight months. Singh says he arrived here in 1999. The government says he entered at "an unknown place and at an unknown time." In 2000, Singh filed an application for asylum, withholding of removal, and relief under Article 3 of the United Nations Convention Against Torture (CAT). He also asked for the right to depart voluntarily should these be denied.

Singh alleges that he is a member of an organization known as the All India Sikh Student Federation (AISSF)

and that he is an adherent of Sikhism and a firm believer in the right of Sikhs to form their own country (generally referred to as Khalistan). As a result, he says, he faces persecution or torture on the basis of his political opinion and membership in a social group if he is returned to India. An immigration judge (IJ) concluded, on the basis of Singh's application, that he was ineligible for relief from removal as a danger to the security of the United States under 8 U.S.C. § 1158(b)(2)(A)(iv). On appeal, however, the Board of Immigration Appeals (BIA) remanded for further analysis. After taking additional evidence, including Singh's oral testimony, a new IJ denied his application and refused to grant voluntary departure after concluding that Singh's story was not credible and that in any event he had failed to show that he met the one-year deadline for asylum applications prescribed by 8 U.S.C. § 1158(a)(2)(B). The BIA adopted and affirmed that decision, and Singh now petitions for our review. Because we do not have jurisdiction to review questions about the one-year asylum deadline, *see id.* § 1158(a)(3), or refusals to grant voluntary departure, *see id.* § 1229c(f), we consider only the denials of withholding of removal and CAT relief.

According to Singh's asylum application, he was born in India's Punjab region in 1971. Punjab forms part of India's northwestern border with Pakistan (and that country's own Punjab state), and the majority of its residents practice the Sikh religion. This group includes his parents, who raised him in the faith. Singh explained the nature of his fear of persecution or torture in a sworn written statement appended to his application:

> That I have a fear of returning to India, and fear of persecution, for the following reasons:
>
> That I have participated in the politics of Sikhs since age 10, I first became student member in All India

> Sikh Student Federation. It is the teachings of the All India Sikh Student Federation to participate in the cause and enlighten other fellow students to raise voice for the separate Sikh State, namely Khalistan.
>
> I also participated and became Member of Akali Dal (Mann), the function of Akali Dal was to voice the cause of Separate Sikh State and bear arms and be ready to go to war with Indian Army. In 199 [sic] Akali Dal became two parties one party was headed by Akali Dal (Badal) and one party headed by Akali Dal (Mann). Akali Dal (Mann) was defeated by Akali Dal (Badal) in elections. I then decided to join Khalistan Commando Force (KCF). I was trained to protect the young Sikh males by spying in the activities of Punjab Police and Indian Army in our area, who were always on the look out for terrorist groups supporting the cause of Khalistan, young Sikh males of the most families are often suspected of terrorist activities.

Relying on a 1997 State Department report that vaguely described certain Sikh terrorist activities in northern India, the first IJ found that Singh's membership in the AISSF, Akali Dal (Mann), and KCF groups made him a danger to the security of the United States. But the report did not specifically mention these groups, and on appeal the BIA concluded that the record failed to support the IJ's decision. The Board remanded the case with directions requesting a more specific determination regarding Singh's eligibility for relief and noted that in any event the danger to security bar did not preclude possible CAT relief.

When the new IJ took over the case, Singh gave oral testimony and submitted several official reports about conditions in India, though he presented no corroborating witnesses nor submitted any biographical documentation (such as a birth certificate) to verify his identity. Remark-

ably, Singh used his oral testimony to contradict significant portions of the sworn written statement he included with his asylum application. In particular, he denied ever saying that he was a member of the Akali Dal (Mann) or Khalistan Commando Force, a claim that greatly troubled the IJ:

> [IJ:] That something that led to the initial denial of his case by [IJ] Smith now all of a sudden he is going to deny any association with, that organization. It seems very untimely and highly suspect.

Seeking an explanation, the IJ turned to Singh:

> [IJ:] Sir, I need to remind you if I determine that any part of your application is based on false information. I will not only deny your application, but you will be permanently ineligible for any benefits under the immigration laws of the U.S. Now, you swore about this, you were sworn to this application by [IJ] Smith and now all of a sudden you're trying to tell me that a very significant part of your application was a mistake or is not true. This is after you submitted this in 2000, four years later you're just now realizing it's a mistake? Do you have anything to say about that?

> [Singh:] I had soon I was baptized by holy waters by my religion.

> [IJ:] I don't understand your response.

> [Singh:] It's not wrong there is a reason that I do that holy water. I was not terrorist.

> [IJ:] Are you a member of the Commando Force, the Khalistan Commando Force?

> [Singh:] No.

> [IJ:] Well, it's in here, sir. In very detailed information in your sworn statement and my question to you

is four years later all of a sudden now you're telling me it's a big mistake.

[Singh:] All I was saying that I was a member of All India Sikh Federation, but I do not have affiliation with that group.

In her own effort to explain the change, Singh's counsel noted that no oral testimony was taken prior to the first IJ's decision and that she was unfamiliar with the Punjabi language and the precise circumstances under which Singh gave the affidavit. She did not mention, as was clarified later, that she helped Singh file the initial asylum application.

The rest of Singh's testimony alleged the following: He became politically involved with the Sikh cause not at age 10, as contended in his sworn statement, but in 1996 when he was in his midtwenties. He believes in the need for a separate Sikh state but insists he has only advocated for that cause peacefully; he nevertheless feels that the Indian government will target him for these activities. He denies ever spying on Punjab police or Indian army personnel. On two separate occasions during his activities for AISSF he was arrested by Indian police while helping to set up chairs at group rallies. During his brief detainment in each case, Singh was labeled a terrorist and taunted and beaten by officers, and only his father's bribery secured his release. After the second arrest he went into hiding for nine months, staying with relatives in different parts of Punjab. In November 1998, he says he boarded a plane for Guatemala where an agent hired by his father stripped him of his travel and identity documents.

Singh also discussed his failure to adhere to the "Five Ks,"—Kesh (uncut hair), Kanga (a wooden comb), Kara (a steel arm bracelet), Kachhera (cotton underwear designed to reflect modesty and moral integrity), and

Kirpan (a strapped sword of 10 to 12 inches in length worn around the waistline for self defense)—the five articles of faith that Sikh believers are commanded to wear at all times. Singh wore only the bracelet at his hearing; he wore western dress with his hair trimmed and face shaven. He explained that he ceased to abide by the Five Ks upon arrival in the United States but that he intended to soon observe them again. He also confirmed that he does not attend a Sikh temple in the United States.

The unexplained discrepancies between Singh's testimony and his earlier written statement, his failure to observe the Five Ks and attend a Sikh temple, and his failure to produce any biographical documentation (including fingerprints) despite four years of ongoing immigration proceedings were all cited by the IJ as reasons for denying relief based on a lack of credibility.

The BIA briefly reiterated these grounds in adopting the decision on appeal, but because the BIA's opinion merely supplements the IJ's decision in this case, we review the IJ's reasoning. *Niam v. Ashcroft*, 354 F.3d 652, 655-56 (7th Cir. 2004). Regardless, credibility findings are entitled to highly deferential review; we look only for specific, cogent reasons that bear a legitimate nexus to the finding and only overturn it under extraordinary circumstances. *Apouviepseakoda v. Gonzales*, 475 F.3d 881, 889-90 (7th Cir. 2007).

Singh argues simply that the IJ failed to provide solid reasons for the adverse credibility finding. Among his more specific claims, Singh insists the IJ should have credited his explanation that he wanted to fit in once in the United States as a justification for failing to adhere to the Five Ks, and he contends (probably correctly) that the absence of fingerprints is the government's fault.

Singh implicates some interesting general issues, such as whether and when testimony without corroboration is sufficient, or whether one's failure to observe religious orthodoxy says anything about the genuineness of a political opinion that tends to be religion-affiliated. But he has completely overlooked the crucial credibility factor: without any real explanation for the change, Singh told one story when filing his asylum application and another at his hearing four years later. Because the discrepancies went to the heart of Singh's claims for relief, nothing more was required to support an adverse credibility finding.

The minute it became clear that Singh was directly contradicting his earlier sworn statement, it was appropriate for the IJ to doubt his credibility and decline to accept his testimony at face value. It fell to Singh to explain the discrepancy, and he offered little other than confusing oral testimony and vague theories about a malicious or careless translation in a situation where hard evidence was needed. Affidavits cannot be set aside the moment the oath-taker alleges that he did not understand or was not paying attention.

Finally, we note that Singh is concerned about any finding that he is a member of KCF quite apart from its impact on his applications for withholding or CAT relief. Because the first IJ concluded that Singh's Sikh affiliation made him a danger to the United States, he is afraid that he will be considered a member of a terrorist organization, which would make him generally inadmissible to the United States, *see* 8 U.S.C. § 1182(a)(3)(B)—no small matter in light of his marriage to an American citizen.

Though his anxiety is understandable, it is misguided. The BIA found that the record, which at the time of review included little more than Singh's sworn statement that he was a member of the KCF, did not support the

conclusion that he was a danger to the security of the United States. In other words, the BIA assumed Singh to be a KCF member and still determined it was not a security concern (a view supported by the absence of any Sikh groups from the most recent State Department list of foreign terrorist organizations. *See* U.S. Department of State, *Fact Sheet: Foreign Terrorist Organizations*, Oct. 11, 2005, *available at* http://www.state.gov/s/ct/rls/fs/ 37191.htm). But even if membership in KCF matters, the later finding that we uphold here—that Singh was not credible in testifying about his allegiances—does not require the conclusion that Singh is a member of the KCF. The conclusion that one is not credible in the immigration context means only that substantial evidence indicates that he cannot be believed. It tells us nothing about what is actually true. That "the truth lies somewhere in the middle" is cliché does not diminish the insight; there simply is no finding that Singh is a member of KCF (a group that barely exists anymore, if at all), much less one that he is a terrorist.

The petition for review is DENIED.

A true Copy:

      Teste:

                       _____

                       *Clerk of the United States Court of*
                       *Appeals for the Seventh Circuit*