NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued July 7, 2010
Decided July 16, 2010

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-4059

| | |
|---|---|
| SANDRO SEGURA-FELIPE, *Petitioner,* | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | No. A089-273-726 |
| ERIC H. HOLDER, JR., Attorney General of the United States, *Respondent.* | |

**O R D E R**

An immigration officer questioned Sandro Segura-Felipe over the phone while he was detained in the Kane County Jail for another offense. In that conversation, Segura said that he was from Mexico and had entered the United States unlawfully. Based on his admissions, the government issued a notice to appear, and an immigration judge ordered him removed. On appeal he raises several procedural challenges, including an argument that the questioning that led to his admissions violated a constitutional right to counsel. We deny the petition for review.

Segura is a Mexican citizen who entered the United States without inspection. In 2008 he was pulled over for a traffic violation. As a result of the ensuing search, he was convicted of possessing fraudulent identification. While he was in the Kane County Jail, immigration officials asked him about his status and documented their findings in a Form I-213,[1] known as a "record of deportable alien." Soon thereafter the Department of Homeland Security issued a notice to appear charging him as removable for being present without admission or parole, *see* 8 U.S.C. § 1182(a)(6)(A)(i), and for being convicted of a crime (possessing fraudulent identification) involving moral turpitude, *see id.* § 1182(a)(2)(A)(i)(I).

At his initial hearing before an immigration judge, Segura, through his attorney, asserted that he had not been properly served with the notice to appear. He had been served twice, but puzzlingly, he denied having a copy of the notice. To dispel any confusion, the IJ asked the government to serve him with an additional copy in court. The charges were also read aloud during the hearing, and translated for him into Spanish by an interpreter. The IJ asked Segura a few questions about his wife, a Mexican citizen, and his U.S.-born children. The IJ ended the hearing by granting a continuance for nearly four months, so that Segura could discuss his options with his attorney.

At the second hearing, counsel filed a motion to terminate the case for improper service, arguing that Segura had been served with two different notices to appear that listed separate charges. But the two notices—copies of which he attached to the motion—were worded identically. After submitting the motion, counsel sought another continuance to file a supporting brief. The IJ responded that he was not going to continue the case beyond that day, noting that Segura had already been served with the notice to appear three separate times, the last time even in court. The IJ went on to say that he did not see any reason why the hearing could not be resumed and the issue resolved by asking Segura about the notices he received.

Since Segura did not admit being removable, the government sought to prove removability by submitting an I-213 Form. The form states that Segura is a Mexican citizen, entered the United States without being admitted in 2003, and was convicted of possessing fraudulent identification in 2008. Segura's attorney objected to the form, though, contending that it was based on information the government obtained by denying Segura

---

[1] I-213 forms are routinely accepted as evidence in immigration proceedings, unless the information contained in them is "manifestly incorrect or was obtained by duress." *Barradas v. Holder*, 582 F.3d 754, 763 (7th Cir. 2009). Segura does not argue that the information was manifestly incorrect or that he was subject to duress.

his right to counsel. Segura then testified that he did not realize that the persons who interviewed him over the phone were immigration officers. Segura added that when he was served no one explained the notice to appear to him in Spanish. When the government tried to question him further, for the most part he refused to answer, saying that he was asserting his Fifth Amendment right against self-incrimination. He did, however, concede that he was not a United States citizen, and that he had entered the country without being admitted. Ultimately, the IJ admitted the Form I-213, explaining that he did not have a right to counsel at the time he was served or even before.

Based on the information in the Form I-213, the IJ concluded that Segura was removable on both charges: for being present without admission, and for being convicted of a crime of moral turpitude. The IJ also found that he failed to meet his burden of showing that he was eligible for voluntary departure. As the IJ noted during the hearing, Segura's counsel did not present an argument for voluntary departure, and Segura, when asked, refused to say whether he was willing to leave voluntarily.

The Board of Immigration Appeals dismissed Segura's appeal, though it did conclude that the IJ erred in one respect. The Board agreed with Segura's argument—which, so far as we can tell, he did not raise before the IJ—that it was improper to use the Form I-213 to establish his criminal conviction, because that form is not specified in the statute as one of the forms admissible to prove a conviction. So the Board overturned the finding of removability based on the conviction, but it did not remand because it deemed the I-213 sufficient to prove the other charge, that Segura was present in the country without being admitted. It rejected his argument that the statements in the I-213 were taken in violation of his rights, and it was also unpersuaded that service was faulty. Finally, it found no error in the IJ's refusal to continue the hearing. Segura petitioned for review.

Segura first argues that the IJ erred in denying his motion for a continuance. He contends that the IJ did not sufficiently explain his reasons for denying the motion, going so far as to suggest that the IJ denied the motion based not on the merits but on a crowded docket. He also argues that he showed good cause for the continuance because he wanted to investigate whether the traffic stop that led to his conviction was based on racial profiling.

An IJ has the discretion to grant a continuance for "good cause shown," *see* 8 C.F.R. § 1003.29; *Juarez v. Holder*, 599 F.3d 560, 564-65 (7th Cir. 2010), and must provide an appropriate reason if he denies the motion. *Subhan v. Ashcroft*, 383 F.3d 591, 595 (7th Cir. 2004). The IJ provided an appropriate reason here: he explained that he would not continue

the case to allow for briefing of an issue that could be addressed at the hearing, that is, whether Segura was properly served with a notice to appear. Contrary to Segura's argument, the IJ said nothing to suggest that he was denying the motion based on a crowded docket. And as for Segura's theory about racial profiling, he never presented that argument to the IJ, so the IJ could not have responded to it; thus, the argument is waived. *See Ghani v. Holder*, 557 F.3d 836, 839 (7th Cir. 2009).

Segura next contends that when immigration officials first questioned him over the phone, without his attorney present, they violated a constitutional right to counsel. He equates this right with a criminal defendant's right to counsel. And because of this violation, he continues, the admissions he made to the officials, which were recorded in the Form I-213, should have been excluded from evidence.

Segura's conception of his right to counsel is not quite accurate, though. Although he recognizes that any right to counsel he had arises under the Fifth Amendment rather than the Sixth, he does not acknowledge that the protection the two amendments provide is different. It is; an alien receives less protection than a criminal defendant because a removal proceeding is civil rather than criminal. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038-39 (1984); *Flores v. Ashcroft*, 350 F.3d 666, 669 (7th Cir. 2003). To the extent that there is a constitutional right to counsel in an immigration proceeding, it arises under the Fifth Amendment's right to due process. *See Stroe v. INS*, 256 F.3d 498, 500-01 (7th Cir. 2001); *Ambati v. Reno*, 233 F.3d 1054, 1061 (7th Cir. 2000); *see also Lopez-Mendoza*, 468 U.S. at 1038-39 (no Sixth Amendment right to counsel in removal proceedings); *Debeatham v. Holder*, 602 F.3d 481, 485 (2d Cir. 2010). But to establish a due process violation, the alien would need to show prejudice, that is, that the evidence to which he objects is inaccurate or that its absence might result in a different outcome. *Ramos v. Gonzales*, 414 F.3d 800, 805 (7th Cir. 2005); *Kuschchak v. Ashcroft*, 366 F.3d 597, 601 (7th Cir. 2004). Segura has neither addressed the issue of prejudice nor challenged the facts presented in the I-213. It is hard to see how he could, since at his hearing he admitted the facts in the I-213 that were necessary to support the removal order: that he was not a United States citizen and that he was not admitted or paroled into the United States. *See Ramos*, 414 F.3d at 805.

Next, Segura challenges the Board's conclusion that he received adequate notice of the charges against him, as is required by 8 U.S.C. § 1229(a)(1). He first contends that he received two different notices to appear, specifying different charges. This argument is puzzling, though, because all of the copies of the notice that appear in the record, including the two attached to his motion to terminate, contain the same two charges. At oral argument he represented that yet another notice stated only one of the charges, but he acknowledged that this notice is not in the agency record. Segura also asserts that no one used Spanish to

explain the notice to appear to him, even though he was served three times.  But again, the record belies this argument: as the government points out, each certificate of service says that Segura was given oral notice in "Spanish/English."  Furthermore, it is not clear why oral notice in one's native language would be required: the statute he cites does not require it, *see* 8 U.S.C. § 1229(a)(1), nor does due process, *Nazarova v. INS*, 171 F.3d 478, 483 (7th Cir. 1999).

Finally, Segura challenges Board's denial of voluntary departure.  But we lack jurisdiction to review a denial of voluntary departure.  *See* 8 U.S.C. § 1229c(f); 8 U.S.C. § 1252(a)(2)(B)(I); *Singh v. Gonzales*, 487 F.3d 1056, 1057 (7th Cir. 2007); *Sofinet v. INS*, 196 F.3d 742, 748 (7th Cir. 1999).

Accordingly, the petition for review is DENIED.